UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIM. NO. 3:19-CR-62 (VAB) |
| vs. | : | |
| THERESA FOREMAN | : | April 30, 2020 |

**MEMORANDUM IN SUPPORT OF EMERGENCY MOTION FOR COMPASSIONATE RELEASE UNDER THE FIRST STEP ACT**

Ms. Theresa Foreman files this motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) due to the "extraordinary and compelling reasons" confronting the federal prison system by the COVID-19 pandemic. Ms. Foreman asks this Court to reduce her sentence to time served and release her to home confinement, in light of (a) the growing COVID-19 pandemic, which public health experts and policymakers recognize is particularly dangerous in the confines of a prison, (b) Ms. Foreman's health issues, which place her in higher risk of death or severe illness if exposed to COVID-19, and (c) the presence of COVID-19 at FCI Danbury where Ms. Foreman is incarcerated. Ms. Foreman has been diagnosed with and is being treated for hypertension. She is also considered obese given her height and weight. Accordingly, this pandemic has created extraordinary and compelling reasons for her release to home confinement.

**I.      Procedural History and Background**

On March 4, 2019, Ms. Foreman appeared before this Court to waive indictment, and entered a guilty plea to one count of Tax Evasion in violation of 26 U.S.C. § 7201. The plea agreement provided that due to the tax loss amount, her guideline range was 37 to 46 months. On that same date, Ms. Foreman entered a non-surety bond for $10,000 and was permitted to remain at liberty while awaiting sentencing.

Upon information and belief, Ms. Foreman was fully compliant with the conditions of her release while awaiting sentencing. On January 6, 2020, Ms. Foreman appeared before this Court for sentencing, and was sentenced to one year and one day of imprisonment, a period of supervised release for three years, and a special assessment of $100. ECF No. 46. The Court entered a restitution order on April 3, 2020. Ms. Foreman self-surrendered to FCI Danbury on February 28, 2020. Her projected release date is January 4, 2021.

Ms. Foreman is a 58 year old woman who has issues with hypertension. Prior to going to prison, she would have periodic episodes of hypertension that would require her to go to the emergency room.[1] *See* **Exhibit A** (filed under seal). Since she has been incarcerated, her blood pressure has been at a level where she is now being medicated for hypertension (as opposed to being instructed to control it with diet and exercise). Furthermore, at 5'7" and 233 pounds, Ms. Foreman is medically obese with a body mass index of 36.5.[2] As a result, she is at high risk of complications and even death if she contracts COVID-19.

Extraordinary events that could not have been foreseen at the time of sentencing have made her current state of confinement at FCI Danbury extremely dangerous for Ms. Foreman, particularly since FCI Danbury has had one of the highest numbers of inmates and staff who are positive for COVID-19. As of yesterday, the BOP reports that there are 18 inmates and 26 staff members at FCI Danbury who are positive for COVID-19, but it is unclear how much the facility is testing

---

[1] Her daughter reports to counsel that there were occasions where Ms. Foreman would be at work and would have to be transported to the hospital due to spikes in her blood pressure.

[2] The National Institute of Health indicates that any BMI of 30 or more is characterized as obese. *See* https://www.nhlbi.nih.gov/health/educational/lose_wt/BMI/bmicalc.htm.

2

inmates who are symptomatic.[3]  Notably, recent data reveals that over 70% of tested inmates in the federal system have COVID-19.[4]

In response to this pandemic, Ms. Foreman filed a request with the Warden at Danbury on April 17, 2020, seeking compassionate release due to her medical conditions.  As evidenced by the petition filed in support of her habeas petition [Docket No. 3:20-cv-555 (VAB)], prisoners at FCI Danbury cannot engage in the recommended social distancing and follow the other recommendations to protect themselves from contracting COVID-19.  *See* **Exhibit B** (declaration from Ms. Foreman submitted in conjunction with her habeas petition).  Based on information gleaned from a class action petition recently filed against the Bureau of Prisons and the Warden of FCI Danbury, it is clear that the conditions at FCI Danbury are dire, and that prisoners are unable to engage in any of the CDC's recommendations to protect themselves from contracting COVID-19.  *See Martinez-Brooks, et al. v. Easter, et al.*, Docket no. 3:20-cv569 (MPS), Complaint and Attached Declarations.  As the class action petition asserts, "prisoners cannot practice social distancing, control their exposure to large groups, practice increased hygiene, wear protective clothing, obtain specific products for cleaning or laundry, avoid high-touch surfaces, or sanitize their own environment.  And those problems are no more evident than at FCI Danbury, . . . , one of the hardest hit prisons run by the Federal Bureau of Prisons nationwide."  *Id.* on p 1 (preliminary statement).

---

[3] *See* https://www.bop.gov/coronavirus/ (last accessed April 30, 2020)

[4]*See Over 70% of tested inmates in federal prisons have COVID-19*, Associated Press, Apr. 30, 2020, https://apnews.com/fb43e3ebc447355a4f71e3563dbdca4f

Ms. Foreman is an appropriate candidate for release because she satisfies many of the criteria detailed by Attorney General Barr in his directive to the Bureau of Prisons: she is particularly vulnerable to complications from COVID-19 due to her health conditions; she has a low security score; she has no prior criminal history; she has a verifiable reentry plan to return to her son's home, which is where she lived during the pendency of her criminal case; and she is not a danger to the community.  *See id.*

## II. The Exhaustion Requirement Should Be Waived Given Its Futility Relative To The Current Health Crisis.

Although the First Step Act's provisions for seeking compassionate release contemplate that a prisoner must first exhaust her administrative remedies, *see* 18 U.S.C. § 3582(c)(1)(A)(i), that exhaustion requirement can be waived by the Court where, as here, the requirement is futile. Although Ms. Foreman has not yet received a response to her request for compassionate release, the exhaustion requirement is futile since it is clear she (like nearly every inmate who requests compassionate release) will not be granted relief under BOP's current guidelines.  As a result, the exhaustion requirement is futile and should be waived.

Under the existing criteria employed by the BOP in reviewing requests for compassionate release, there is no possibility that Ms. Foreman's request will be granted.  The governing BOP Program Statement 5050.50 limits the criteria for compassionate release to prisoners who have a "terminal medical condition" or a "debilitated medical condition."[5]  The Program Statement does not include a catch-all category for other "extraordinary and compelling circumstances," which would

---

[5] *See* BOP Program Statement 5050.50, located at
https://www.bop.gov/policy/progstat/5050_050_EN.pdf at p 4-5 (attached hereto as **Exhibit C**).

4

arguably encompass the circumstances occasioned by the COVID-19 pandemic. Indeed, the BOP has recently affirmed that it does not account for COVID-19 in its decisions on compassionate release, and that the existing criteria requiring a "terminal medical condition" or "debilitated medication condition" remain unchanged. *See* **Exhibit D** (correspondence from the Director of the Bureau of Prisons dated April 20, 2020, which states that "[i]n regards to the Bureau's use of compassionate releases for inmates during this time, institutions continue to evaluate and process compassionate release requests **based on existing criteria at this time**. Requests referencing COVID-19 where the inmate asserts current criteria are met (i.e., medical-terminal; medical-debilitated; elderly-medical; etc.), are being processed as expeditiously as possible.") (emphasis added); **Exhibit E** (March 30, 2020 denial letter from warden of FCI Terre Haute, explaining that, "As outlined in Program Statement, 5050.50, . . . an inmate may file a request to the Warden if it has been determined he has been diagnosed with a terminal medical condition, debilitated medical condition, he/she is elderly or elderly with a medical condition. **The current pandemic of the COVID-19 virus in the communities is not a qualifying factor that would warrant a motion to be filed with the sentencing court**.") (emphasis added).[6]

---

[6] The Attorney General's directive to the BOP to recommend home confinement for prisoners who meet certain criteria is separate and apart from the compassionate release process. Not only does it explicitly account for the instant health crisis, but also it is an avenue for relief that is limited to the discretion of the BOP. There is no remedy if a prisoner is not recommended for home confinement, and, contrary to the compassionate release process, the BOP has explicitly directed detainees not to submit their name for consideration. *See* Frequently Asked Questions regarding Potential Inmate Home Confinement in Response to the COVID-19 Pandemic ("In order to protect the public, prior to transfer to home confinement, all inmates must be quarantined at an appropriate BOP facility for 14 days. As the Bureau identifies potential priority candidates for Home Confinement, they will begin to start the quarantine process, regardless of whether they have officially been approved for Home Confinement. This step should enable those inmates to move out of the facility sooner, upon identification and verification of a suitable living situation"), located at

5

Several Judges in this district, including this Court, have agreed that under the circumstances presented by this pandemic, the exhaustion requirement should be waived. *See United States v. Gileno*, No. 3:19-CR-161-VAB, ECF No. 34 (D. Conn. Apr. 17, 2020) (Bolden, J.) ("An unyielding view of the exhaustion requirement is likely to render the BOP incapable of granting adequate relief, and, in light of Mr. Gileno's vulnerability to COVID-19, he would be unduly prejudiced by delay."); Order, *United States v. Coston*, No. 3:16-CR-127-SRU, ECF No. 98 (D. Conn. Apr. 16, 2020) (Underhill, C.J.) ("I join many numerous other district courts in holding that, under the circumstances of COVID-19, the administrative exhaustion requirement is waived."); *United States v. McCarthy*, Nos. 3:17-CR-0230 (JCH), 3:92-CR-0070 (JCH), 2020 WL 1698732, *4 (D. Conn. Apr. 8, 2020) (Hall, J.) ("[I]n light of the urgency of McCarthy's request, the likelihood that he cannot exhaust his administrative appeals during his remaining 26 days of imprisonment, and the potential for serious health consequences, the court waives the exhaustion requirement of section 3582(C)(1)(A)."); *United States v. Colvin*, No. 3:19-CR-179 (JBA), 2020 WL 1613943, *2 (D. Conn. Apr. 2, 2020) (Arterton, J.) ("[I]f Defendant contracts COVID-19 before her appeals are exhausted, the undue delay might cause her to endure precisely the 'catastrophic health consequences' she now seeks to avoid."); *United States v. Ramon Sanchez*, 3:18-cr-140 (VLB), 2020 WL 1933815, *3-5 (D. Conn., Apr. 22, 2020) (Bryant, J.) (finding that the context of the exhaustion requirement suggests that "Congress also intended to promote 'meaningful and prompt judicial review' even at the cost of the Bureau's authority and consequently, the Court "has the discretion to waive the 30-day waiting period where strict enforcement would not serve the Congressional objective of allowing meaningful and prompt

---

https://www.bop.gov/coronavirus/faq.jsp. Since this avenue is limited to the discretion of the BOP, there is no remedy for a prisoner who is denied home confinement.

6

judicial review."). Accordingly, Ms. Foreman submits that the exhaustion requirement should be waived.

### III. This Court May Reduce Ms. Foreman's Sentence To Time Served Based On Its Own Determination Of Extraordinary And Compelling Reasons.

The First Step Act grants sentencing courts authority to reduce an otherwise final term of imprisonment for "extraordinary and compelling reasons." 18 U.S.C. § 3582(c)(1)(A)(i). Under the statute, the requirements for release are that the court (1) find extraordinary and compelling reasons for the reduction, (2) consider the relevant sentencing factors under 18 U.S.C.§ 3553(a), and (3) ensure any reduction is consistent with applicable policy statements. Here, the Court has the authority to modify Ms. Foreman's sentence because "extraordinary and compelling reasons" are present.

Since the COVID-19 pandemic, numerous courts around the country have found extraordinary and compelling reasons warranting relief where a defendant presents evidence of a pre-existing-condition making him more vulnerable to COVID-19 in combination with the increased risks of COVID-19 in prisons. In this District, several defendants have been granted relief. *See*, e.g, *Gileno*, No. 3:19-CR-161-VAB, ECF No. 34 (D. Conn. Apr. 17, 2020) (Bolden, J.) (granting compassionate release based on "extraordinary and compelling reasons" where defendant "suffers from asthma and respiratory conditions that place him at greater risk from COVID-19"); *United States v. Coston*, No. 3:-16-CR-127-SRU, ECF No. 98 (D. Conn. Apr. 16, 2020) (Underhill, C.J.) (granting compassionate release based on "extraordinary and compelling reasons relating to the COVID-19 pandemic and [defendant's] underlying health condition (severe asthma)); *United States v. Norris*, No. 3:18-CR-243-SRU, ECF No. 37 (D. Conn. Apr. 16, 2020) (Underhill, C.J.) ("[Defendant] suffers from asthma and uses an Albuterol inhaler to treat his symptoms. . . . [H]is

7

medical condition and current conditions of confinement constitute extraordinary and compelling reasons to reduce his sentence."); *United States v. McCarthy*, Nos. 3:17-CR-230 (JCH), 3:92-CR-70 (JCH), 2020 WL 1698732, *5 (D. Conn. Apr. 8, 2020) (Hall, J.) ("The defendant's age and medical condition, taken in concert with the COVID-19 public health crisis, constitute an extraordinary and compelling reason to reduce McCarthy's sentence."); *United States v. Colvin*, No. 3:19-CR-179, 2020 WL 1613943, *4 (D. Conn. Apr. 2, 2020) (Arterton, J.) (finding "extraordinary and compelling reasons justifying . . . immediate release under Section 3582(c)(1)(A) and U.S.S.G. 1B1.13" where defendant has "diabetes, a serious medical condition which substantially increases her risk of severe illness if she contracts COVID-19" (internal quotation marks, citation, and alteration omitted)); *United States v. Jepsen*, No. 3:19-CV-73 (VLB), 2020 WL 1640232, *5 (D. Conn. Apr. 1, 2020) (Bryant, J.) (granting compassionate release where defendant "is immunocompromised and suffers from multiple chronic conditions that are in flux and predispose him to potentially lethal complications if he contracts COVID-19").

     Ms. Foreman is highly vulnerable to complications from COVID-19 due to her hypertension and obesity. Given her vulnerabilities, prison is the last place she should be. The *New York Times* recently explained why jails are a much more dangerous place to be than even a cruise ship.[7] Jails and prisons are sites of disproportionate infectious disease rates.[8] Conditions of pretrial

---

[7] *See An Epicenter of the Pandemic Will Be Jails and Prison, If Inaction Continues*, N.Y. TIMES (Mar. 16, 2020), available at https://www.nytimes.com/2020/03/16/opinion/coronavirus-in-jails.html

[8] Leonard S. Rubenstein, *et al.*, *HIV, Prisoners, and Human Rights*, LANCET (July 14, 2016), https://www.thelancet.com/journals/lancet/article/PIIS0140-6736(16)30663-8/fulltext

8

confinement create the ideal environment for the transmission of contagious diseases.[9] Incarcerated people have poorer health than the general population, and even in the best of times, medical care is limited in federal pretrial detention centers.[10] Given the harrowing details relayed about the conditions at FCI Danbury, it is clear that the BOP is ill-equipped to manage a pandemic of this scale.

COVID-19 cases have already been confirmed at multiple BOP facilities, and with every day that passes, BOP identifies additional cases at additional institutions. As of April 29, 2020, BOP has identified 1,534 inmate cases and 343 staff cases; 31 inmates have died in BOP custody.[11] As the court noted in *United States v. Caddo*, "it is unknowable whether BOP detainees or inmates have Covid-19 until they are tested, and BOP has not conducted many or any such tests because, like the rest of the country, BOP has very few or no actual Covid19 test packets." Order at 5, *United States v. Caddo*, No. 3:18-cr-08341-JJT, ECF No. 174 (D. Ariz. Mar. 23, 2020). Because transmission may happen asymptomatically, BOP is quarantining inmates even in institutions where there are no positive cases. The Centers for Disease Control ("CDC") now warns that as many as 25 percent of people infected with the virus have no symptoms, would not be tested for the virus, and may be "unwitting spreaders." Indeed, recent data suggests that over 70% of tested inmates are

---

[9] Joseph A. Bick, *Infection Control in Jails and Prisons*, 45 CLINICAL INFECTIOUS DISEASES 8, 1047-1055 (Oct. 15, 2007), available at https://doi.org/10.1086/521910

[10] Laura M. Maruschak, *et al.*, *Medical problems of State and Federal Prisoners and Jail Inmates, 2011-12*, Bureau of Justice Statistics Special Report, NCJ 248391 (rev. Oct. 4, 2016), available at https://www.bjs.gov/content/pub/pdf/mpsfpji1112.pdf

[11] U.S. Bureau of Prisons, COVID-19 Coronavirus, https://www.bop.gov/coronavirus/ (last visited Apr. 29, 2020).

9

positive for COVID-19.[12]  Dr. Jeffrey Shaman, an infectious disease expert at Columbia University, explains: "The bottom line is that there are people out there shedding the virus who don't know that they're infected." [13]  For someone like Ms. Foreman, who cannot socially distance from others, the best she could possibly hope for is to try to avoid those exhibiting symptoms such as a fever or a cough.  Given the data reflecting the number of infected individuals who are asymptomatic or contagious before showing symptoms, Ms. Foreman has no way to protect herself in a prison environment, particularly given the conditions detailed in her declaration.  *See* **Exhibit B**.

If Ms. Foreman contracted COVID-19, the result could be fatal.  She has hypertension and she is obese.  As a result, she is in multiple risk groups for severe illness and death from COVID-19.[14]   The WHO-China Joint Mission Report provided historical mortality rates for those who contracted COVID-19 with specific pre-existing conditions. For those with hypertension, the mortality rate was 8.4%.[15]  On April 22, 2020, the *Journal of the American Medical Association*

---

[12] *See Over 70% of tested inmates in federal prisons have COVID-19*, AP News, Apr. 30, 2020 https://apnews.com/fb43e3ebc447355a4f71e3563dbdca4f

[13] Apoorva Mandavilli, *Infected but Feeling Fine: The Unwitting Coronavirus Spreaders*, N.Y. TIMES (April 1, 2020), available at https://www.nytimes.com/2020/03/31/health/coronavirusasymptomatic-transmission.html?action=click&module=Top%20Stories&pgtype=Homepage

[14] *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html

[15] [15] Report of the WHO-China Joint Mission on Coronavirus Disease 2019 (COVID-19), World Health Organization (Feb. 28, 2020), at 12, https://www.who.int/docs/default-source/coronaviruse/whochina-joint-mission-on-covid-19-final-report.pdf (finding fatality rates for patients with COVID-19 and comorbid conditions to be: "13.2% for those with cardiovascular disease, 9.2% for diabetes, 8.4% for hypertension, 8.0% for chronic respiratory disease, and 7.6% for cancer")

("JAMA") published the first large study of hospitalized COVID-19 patients, which demonstrated that those with obesity, hypertension, and diabetes are at the greatest risk for complications from COVID-19.[16]   Many patients with pre-existing conditions who developed severe COVID-19 and did not die, still faced prolonged recovery periods, including extensive rehabilitation from neurologic damage, loss of digits, and loss of respiratory capacity.

**IV.     A Sentence of Time Served is Sufficient to Accomplish the Goals of Sentencing.**

When extraordinary and compelling reasons are established, the Court must consider the relevant sentencing factors in § 3553(a) to determine whether a sentence reduction is warranted. 18 U.S.C. § 3582(c)(1)(A)(i). Under all of the circumstances in this case, the Court should conclude that the time that Ms. Foreman has already served is sufficient to satisfy the purposes of sentencing. Under *Pepper v. United States*, 562 U.S. 476, 492 (2011), the Court can, and indeed must, consider "the most up-to-date picture" of the defendant's history and characteristics, which "sheds light on the likelihood that [the defendant] will engage in future criminal conduct."  Here, the overriding factor under § 3553(a) that was not present at the time of sentencing is the COVID-19 pandemic and the serious risk it presents. Although the circumstances of the present offense qualified Ms. Foreman for the sentence that this Court originally imposed, the sentencing purpose of just punishment does not warrant a sentence that includes exposure to a life-threatening illness. The §

---

[16] *See* Safiya Richardson, et al., "Presenting Characteristics, Comorbidities, and Outcomes Among 5700 Patients Hospitalized With COVID-19 in the New York City Area," *JAMA*, Apr. 22, 2020, available at https://jamanetwork.com/journals/jama/fullarticle/2765184; *see also* CDC, *Hospitalization Rates and Characteristics of Patients Hospitalized with Laboratory-Confirmed Coronavirus Disease 2019 — COVID-NET, 14 States, March 1–30, 2020*, Weekly / April 17, 2020 / 69(15);458–464, https://www.cdc.gov/mmwr/volumes/69/wr/mm6915e3.htm

11

3553(a) factors can be met in this case by an order of home confinement as a condition of supervised release.

The Eighth Amendment also guarantees inmates in BOP custody the right to adequate medical care for a serious medical need. *See Farmer v. Brennan*, 51 U.S. 825, 832 (1994); *Estelle v. Gamble*, 429 U.S. 97, 103–05 (1976). One court recently invoked the Eighth Amendment in granting a motion for compassionate release, noting that "a reduction of [defendant's] sentence will enable him to seek, from the doctors and hospitals of his choice, what may be better medical care than the BOP is obligated or able to provide, particularly given the very real threat that COVID-19 poses in the institutional environment." *United States v. Williams*, No. 3:04-CR-95-MCR-CJK, 2020 WL 1751545 (N.D. Fla. Apr. 1, 2020).

Ms. Foreman has no criminal history and upon information and belief, she has no disciplinary history since her self-surrender on February 28, 2020. Although she has been in prison only a little over two months, it is clear this Court did not intend to impose a sentence that could result in her developing serious medical complications or even death as a result of COVID-19. Ms. Foreman has a family to support her if released, and she could safely remain in self-quarantine for fourteen days at her son's home if released, and spend the remainder of her sentence on home confinement.

WHEREFORE, Ms. Foreman respectfully requests that the Court grant this motion for compassionate release, reduce her sentence to time served, and allow her to discharge to home confinement.

12

                                                    Respectfully submitted,

                                                    THE DEFENDANT,
                                                    Theresa Foreman

                                                    OFFICE OF THE FEDERAL DEFENDER

Dated: April 30, 2020                   */s/ Allison M. Near*
                                                    Allison M. Near
                                                    Assistant Federal Defender
                                                    265 Church Street, Suite 702
                                                    New Haven, CT 06510
                                                    Phone: (203) 498-4200
                                                    Bar No.: ct27241
                                                    Email: allison_near@fd.org

                                                    <u>CERTIFICATE OF SERVICE</u>

     I HEREBY CERTIFY that on April 30, 2020, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

                                                      <u>/s/ Allison M. Near</u>
                                                      Allison M. Near