UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES,<br>    *Plaintiff*,<br><br>v.<br><br>THERESA FOREMAN,<br>    *Defendant.* | No. 3:19-cr-62 (VAB) |

**RULING AND ORDER ON MOTION FOR COMPASSIONATE RELEASE**

Theresa Foreman ("Defendant") has moved for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). Mot. for Compassionate Release, ECF No. 56 (Apr. 30, 2020) ("Def.'s Mot."); Mem. in Supp. of Mot. for Compassionate Release, ECF No. 56-1 (Apr. 30, 2020) ("Def.'s Mem.").

On May 6, 2020, the Court held a telephonic hearing on the motion.[1] Minute Entry, ECF No. 64 (May 6, 2020).

For the reasons set forth below, the Court **GRANTS** Ms. Foreman's motion for compassionate release.

Ms. Foreman's term of imprisonment is reduced to **TIME SERVED**, and she shall be immediately released from Bureau of Prisons ("BOP") custody. All other conditions of supervised release from her January 6, 2020 judgment shall remain in effect.

**I.  BACKGROUND**

On May 4, 2019, Ms. Foreman pled guilty to a one-count Information charging her with tax evasion under 26 U.S.C. § 7201. Plea Agreement, ECF No. 5 (Mar. 4, 2019). The Court

---

[1] Ms. Foreman did not appear at the hearing, but through her counsel, waived any right to appear.

1

sentenced her to a prison term of a year and a day, a three-year term of supervised release, a special assessment of $100.00, and restitution, to be ordered at a later time. Minute Entry, ECF No. 45 (Jan. 6, 2020); J., ECF No. 46 (January 28, 2020).

On February 28, 2020, Ms. Foreman self-surrendered to the Bureau of Prisons ("BOP"). *Id.*

On April 3, 2020, the Court issued a restitution order. Order, ECF No. 52 (Apr. 3, 2020).

On April 30, 2020, Ms. Foreman filed an emergency motion to reduce her sentence under Section 603 of the First Step Act. Emergency Mot., ECF No. 56 (Apr. 30, 2020); Suppl. Mem., ECF No. 56-1 (Apr. 30, 2020) ("Def.'s Mem."); Exs. B–D, ECF No. 56-2–5 (Apr. 30, 2020).

On May 4, 2020, the Government filed an opposing memorandum. Gov't Mem., ECF No. 52 (May 4, 2020).

On May 5, 2020, Ms. Foreman filed a reply. Reply, ECF No. 63 (May 5, 2020).

On May 6, 2020, the Court held a telephonic motion hearing. Minute Entry, ECF No. 64 (May 6, 2020).

**II.     STANDARD OF REVIEW**

A court may modify a term of imprisonment on compassionate release grounds in two circumstances: (1) "upon motion of the Director of the Bureau of Prisons;" or (2) "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, . . ." 18 U.S.C. § 3582(c)(1)(A); *see also United States v. Gotti*, No. 02 CR 743-07 (CM), 2020 WL 497987, at *1 (S.D.N.Y. Jan. 15, 2020) ("In December 2018, as part of the First Step Act, Congress worked a change to th[e] rule of long standing" that a court could only modify a

sentence upon motion from the Bureau of Prisons. "A court may now consider a motion for compassionate release made by a defendant who has exhausted his administrative remedies by petitioning the Director of the BOP to make such a motion, assuming the Director fails to act on the inmate's request within thirty days[.]").

In determining whether to grant a motion to modify a sentence, a court must consider the factors set forth in 18 U.S.C. § 3553(a). A court may only grant such a modification if it finds that "extraordinary and compelling reasons warrant" a modification, or that

> the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community.

*Id.* A court must also find that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.*

### III. DISCUSSION

The applicable policy statement for compassionate release is found in the U.S. Sentencing Guidelines (U.S.S.G) § 1B1.13 and Commentary. U.S.S.G. § 1B1.13 states in part:

> [T]he court may reduce the term of imprisonment if . . . the court determines that [e]xtraordinary and compelling reasons warrant the reduction; . . . [t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and [t]he reduction is consistent with this policy statement.

*United States v. Lisi*, No. 15 CR. 457 (KPF), 2020 WL 881994, at *3 (S.D.N.Y. Feb. 24, 2020) (quoting U.S.S.G. § 1B1.13(1)(A), (2), and (3)). While there exists a dispute among district courts as to whether a court must still defer to the BOP's determination of what qualifies as an "extraordinary and compelling reason" to modify a sentence, a majority of district courts, including in this District, have found that courts may make that determination independently.

*See*, *e.g.*, *United States v. Rivernider*, No. 3:10-cr-222 (RNC), 2020 WL 597393, at *3 (D. Conn. Feb. 7, 2020) (collecting cases); *Lisi*, 2020 WL 881994, at *3 (collecting cases). Yet, U.S.S.G. "§ 1B1.13's descriptions of 'extraordinary and compelling reasons' remain current," *United States v. Ebbers*, No. 02 Cr. 1144-3 (VEC), 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020), and "[t]he standards for considering the motion remain helpful as guidance to courts which hear these motions without the BOP as an intermediary," *United States v. Zullo*, No. 09 Cr. 0064-02 (GWC), 2019 WL 7562406, at *3 (D. Vt. Sept. 23, 2019).

Ms. Foreman argues that at fifty-eight years old, she "is highly vulnerable to complications from COVID-19 due to her hypertension and obesity." Def.'s Mem. at 8. She argues further that the conditions at FCI Danbury, and her inability to social distance herself, leave Ms. Foreman with "no way to protect herself in a prison environment[.]" *Id.* at 9–10.[2]

The Government argues that, in considering the guidelines established in U.S.S.G. § 1B1.13, Ms. Foreman's motion can only be satisfied if extraordinary or compelling reasons exist, as the other factors are either irrelevant or unmet. Gov't Mem. at 5–6. The Government refers to CDC guidance and distinguishes between hypertension and pulmonary hypertension. *Id.* at 6. In its view, while pulmonary hypertension is an increased risk factor, Ms. Forman suffers from hypertension and now is prescribed medication for her hypertension—medication "she was not receiving prior to her arrival at the Bureau of Prisons." *Id.* at 7. In its view, she fails to allege that

---

[2] Ms. Foreman also argued that the Court should waive the exhaustion requirement. Def.'s Mem. at 4. The Warden at Danbury FCI, however, has since denied her request for compassionate release, stating Ms. Foreman's "concern about being potentially exposed to, or possibly contracting, COVID-19 does not currently warrant an early release from [her] sentence[,]" because she failed to demonstrate a debilitating medical condition and has not served twenty-five percent of her sentence. Gov't Mem. at 3–4; Ex. C, ECF No. 62-1 (May 4, 2020). As the Warden has already denied Ms. Foreman's request, the Court will not consider exhaustion. *See* 18 U.S.C. § 3582(c)(1)(A) (exhaustion requires either exhausting all administrative rights to appeal a failure of the BOP to bring a motion on a defendant's behalf or waiting thirty days from the receipt of a request for compassionate release, whichever is earlier).

her hypertension is uncontrolled. *Id.* at 8. The Government further argues that Ms. Foreman "does NOT suffer from obesity to the degree identified as problematic by the CDC[.]" *Id.* at 8.

With respect to cases of COVID at FCI Danbury, the Government notes that "while there are and have been confirmed cases of COVID-19 among staff and inmates at FCI Danbury, there have been no confirmed inmate cases at the CAMP, where [Ms. Foreman] is housed." *Id.*[3]

Ms. Foreman replies "that hypertension is a critical risk factor . . . [and] is the top reported comorbidity factor for COVID-19 in New York State when the patient is over 40." Reply at 1–2 (emphasis omitted). She argues that "the treatment does not shield her from complications, particularly since it does not appear that her hypertension is under control." *Id.* at 2. In her view, BOP "has done nothing to 'reduce' her risk of serious disease, and . . . puts her at increased risk each day by virtue of her exposure to the virus and her inability to engage in the protective measures recommended by the CDC." *Id.* at 3. Ms. Foreman responds to the Government's statements about COVID-19 at Danbury, countering that because staff move between the various facilities at Danbury, the lack of positive cases at the CAMP, where she is housed, does not indicate that the "facility has insulated itself from this virus." *Id.* at 3.

The Court agrees.

Since the outbreak of the COVID-19 pandemic, numerous courts within this Circuit have held that a defendant's pre-existing health conditions—respiratory conditions in particular—in combination with the increased risks of COVID-19 in prisons constitute "extraordinary and compelling reasons" warranting relief. *See, e.g.*, *United States v. Pena*, No. 15-cr-551 (AJN), 2020 WL 2301199, at *4 (S.D.N.Y. May 8, 2020) ("This Court has repeatedly recognized that COVID-19 presents a heightened risk for individuals with hypertension[.]"); *United States v.*

---

[3] The Government also notes that Ms. Foreman was reviewed as a candidate for home confinement but denied. Gov't Mem. at 9.

*Scparta*, No. 18-cr-578 (AJN), 2020 WL 1910481, at *9 (S.D.N.Y. Apr. 19, 2020) (finding hypertension a comorbidity which increases the likelihood of serious risk from COVID-19 that, combined with defendant's other underlying health issues, warranted compassionate release); Order on Def.'s Mot. for Compassionate Release at 2–3, *United States v. Norris*, No. 17-cr-106 (SRU) (ECF No. 119), 3:18-cr-243 (SRU) (ECF No. 37) (Apr. 16, 2020) ("[Mr.] Norris suffers from asthma and uses an Albuterol inhaler to treat his symptoms. Health officials have recognized that individuals with chronic respiratory disease are deemed at greater risk of COVID-19. Due to his incarceration, [Mr.] Norris is unable to properly safeguard against infection. Therefore, for the reasons set forth in his motion, I conclude that his medical condition and current conditions of confinement constitute extraordinary and compelling reasons to reduce his sentence[.]" (internal citations omitted)); *United States v. Sawicz*, 2020 WL 1815851, at *2 (E.D.N.Y. Apr. 10, 2020) ("The COVID-19 outbreak at FCI Danbury, combined with the fact that the defendant is at risk of suffering severe complications if he were to contract COVID-19 because of his hypertension, justifies waiver [of the exhaustion requirement] . . . [and] extraordinary and compelling reasons warrant the defendant's release from prison.").

While Ms. Foreman does not appear to have pulmonary hypertension, hypertension is still a risk factor, and this factor along with her weight—even if her body mass index is not high enough to create the highest risk—along with her age of 58, magnifies the risk here.[4] If Ms. Foreman had been housed at a facility without any cases of COVID-19, perhaps her underlying medical conditions would not have warranted compassionate release. But the number of cases of COVID-19 at FCI Danbury creates potentially catastrophic consequences for her. As of May 11,

---

[4] The CDC recommends that those with hypertension "continue to manage and control their blood pressure and take their medication as directed." *Coronavirus Disease 2019: At Risk for Severe Illness*, CENTERS FOR DISEASE CONTROL AND PREVENTION (Apr. 17, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html#serious-heart-conditions.

2020, BOP has identified twenty-seven current inmate cases, forty-eight recovered inmate cases, seven current staff cases, fifty recovered staff cases, and one inmate death at Danbury FCI alone. *COVID-19: Coronavirus*, U.S. BUREAU OF PRISONS, https://www.bop.gov/coronavirus/ (last visited Apr. 23, 2020).

Under 18 U.S.C.§ 3622, the Bureau of Prisons could have obviated the need for compassionate release by issuing an emergency furlough, which would have permitted Ms. Foreman to be released to serve her term on home confinement, for only so long as the pandemic existed and then return to a Bureau of Prison facility, authority this Court lacks. *See* Order, *U.S. v. Delgado*, No. 3:18-cr-17-(VAB)-1, ECF No. 76 at 1 n.1 (Apr. 30, 2020) (noting Congress has vested the Bureau of Prisons with the power to grant furloughs and place prisoners in home confinement); *United States v. Miles*, No. 11 CR. 581 (JFK), 2020 WL 1989290, at *1 (S.D.N.Y. Apr. 27, 2020) ("The Court, however, lacks the authority to" release the defendant to home confinement. (citing *U. S. v. Kanagbou*, 726 F. App'x 21, 25 n.1 (2d Cir. 2018) (summary order) ("[I]t is well established that the district court does not control how the Executive Branch carries out a defendant's sentence."))); Furloughs, 28 C.F.R. §§ 570.30–570.38 (articulating the purpose, process, and procedures of inmates eligible for furlough). But the Bureau of Prisons has not chosen to do so.

Ms. Foreman is a first-time offender of a non-violent offense. She does not pose a threat to the community or a danger to the safety of any other person. In the absence of a decision from BOP to furlough Ms. Foreman, where time is of the essence, reduction of Ms. Foreman's sentence to time served is consistent with U.S.S.G. § 1B1.13 because extraordinary and compelling reasons warrant the reduction.

Accordingly, having considered all of these factors as well as those set forth in 18 U.S.C. § 3553(a), the Court concludes that the balance of factors tips in favor of immediate release, however slightly.

### IV. CONCLUSION

For the reasons explained above, the Court **GRANTS** the motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A). Ms. Foreman's term of imprisonment is reduced to **TIME SERVED**. It is **ORDERED** that Ms. Foreman be released immediately to begin her three-year term of supervised release. All other conditions of supervised release from the Court's January 6, 2020, judgment shall remain in effect.

Upon returning to her home, Ms. Foreman shall self-quarantine for fourteen (14) days. She must also contact her physician to determine whether she is a candidate for testing for COVID-19. If her medical provider determines that she needs to be tested, she must comply with that testing. If the test is positive, she shall promptly report the result to the Bureau of Prisons.

**SO ORDERED** at Bridgeport, Connecticut, this 11th day of May, 2020.

    /s/ Victor A. Bolden
Victor A. Bolden
United States District Judge